# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-02-00070-CV

In the Matter of L. C.

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-21375, HONORABLE W. JEANNE MUERER, JUDGE PRESIDING

## MEMORANDUM OPINION

This is an appeal from a judgment of delinquency. Appellant was fifteen years old and was found to have engaged in the delinquent conduct of possessing cocaine in an amount less than one ounce. *See* Tex. Fam. Code Ann. § 51.03 (West 2002); Tex. Health & Safety Code Ann. § 481.115 (West Supp. 2003). Appellant filed a motion to suppress evidence alleging an illegal search and seizure. After the court denied his motion, appellant pleaded true to the allegation against him. He was placed on probation for nine months in the custody of his mother. He appeals complaining by one ground of error that the court abused its discretion in denying the motion to suppress.[1] Because we conclude that the contraband was obtained as a result of a consensual search, we will affirm the judgment.

---

[1] A juvenile may appeal a judgment entered on a plea or stipulation of evidence if the appeal is based on a matter raised by written motion before the juvenile agreed to the plea or stipulation. Tex. Fam. Code Ann. §§ 54.034(2), 56.01(n)(2) (West 2002); *In re D.A.R.*, 73 S.W.3d 505, 508-09 (Tex. App.—El Paso 2002, no pet.).

## FACTUAL BACKGROUND

At approximately noon on September 13, 2001, police officer Richard Egal, Jr. was patrolling in southeast Austin. In the 2500 block of Elmont, he notice what he thought was a school-aged boy, appellant, walking along the sidewalk during school hours. Appellant was in the company of an adult male who appeared to be in his thirties, which the officer thought was unusual.[2] Officer Egal stopped his vehicle and approached the two on foot. Officer Egal testified that appellant's demeanor was that "[h]e appeared not quite cognizant of myself. He appeared to be a bit disoriented. I asked simple questions; name, date of birth, how old are you. On the date of birth question I asked him several times. . . . The man I stopped with him actually got upset and said, 'Come on, man, Just tell him when you were born.'" Appellant then said that he was fifteen and had dropped out of school. Officer Egal testified that he suspected that appellant was subject to a juvenile curfew.

After identifying the two, Officer Egal ran a computer warrants check on them. He said he recognized both individuals "from a previous incident involving illegal narcotics." While waiting for the warrant information, Officer Egal questioned the two about where they were going and what they were doing. He then asked for and was granted consent to search the adult. That search revealed nothing illegal. Officer Egal's direct testimony about his search of appellant was as follows:

Q: I asked both for consent to search them.

\* \* \* \*

---

[2] Officer Egal later testified that he knew both appellant and his companion.

2

A: His [appellant's] first response was – I don't remember the exact words. It was to the effect, "Look, I don't have anything here." He stuck his hands in his pocket and it [money] dropped to the ground.

Q: So in your mind did he answer the question?

A: No.

Q: So what did you do?

A: I asked him again.

Q: What was his response the second time?

A: He reached into another pocket and pulled out a lighter and said, "Look, I don't have anything."

Q: And in your mind was that an answer to your question?

A: No, ma'am.

Q: Did you ask him again?

A: Yes, I did.

Q: And what was his response the third time?

A: I don't honestly remember his exact wording. His response was something like, okay or all right. He held his arms up to his side, like, go ahead.

Q: And so did you proceed to search [appellant] after he gave you consent?

A: Yes. . . . I searched his pockets.

Q: Did you find anything in his pockets?

A: Yes, I did. . . . Right front pant pocket. . . . A small plastic bag containing a yellowish-white powdery substance.

3

Officer Egal testified that he was in police uniform and was driving a patrol car. He stopped his car within ten feet of the pair of pedestrians. He admitted that he was much larger in size than appellant. Officer Egal testified that he "felt that [appellant] had attempted to distract [him] and avoid answering the question." He did not advise appellant that he was free to refuse consent to a search.

## DISCUSSION

### *Standard of Review*

A decision on a motion to suppress is reviewed for an abuse of discretion. *See In re R.J.H.*, 79 S.W.3d 1, 7 (Tex. 2002); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *In re V.P.*, 55 S.W.3d 25, 30 (Tex. App.—Austin 2001, pet. denied). We use a bifurcated standard of review, giving almost total deference to the trial court's findings of fact, but conducting a *de novo* review of the court's application of law to facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *In re D.G.*, 96 S.W.3d 465, 467 (Tex. App.—Austin 2002, no pet.). Where there is no factual dispute, we review questions of credibility and demeanor *de novo*. *Guzman v. State*, 995 S.W.2d 85, 89 (Tex. Crim. App. 1997); *V.P.*, 55 S.W.3d at 31. Officer Egal was the only witness to testify at the suppression hearing. The circumstances surrounding the search in this case are not disputed.

If there are no explicit fact findings, as in this case, we will review the record in a light most favorable to the trial court's judgment and assume the court made implied findings of fact supported by the evidence. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). We must

4

sustain the trial court's ruling if the record reasonably supports it and it is correct on any theory of law applicable to the case. *Ross*, 32 S.W.3d at 855-56; *D.G.*, 96 S.W.3d at 467.

### *Consent to Search*

The Fourth and Fourteenth Amendments to the United States Constitution and article 1, section 9 of the Texas Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV, XIV; Tex. Const. art. I, § 9. A warrantless search is per se unreasonable unless it is subject to one of the well-delineated exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One such exception is voluntary consent. *Id.* at 223; *Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000).

Consent to a search must be voluntary. *Schneckloth*, 412 U.S. at 248-49. It cannot be explicitly or implicitly coerced whether by implied threat or covert force. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (citing *Schneckloth*, 412 U.S. at 228); *D.R.*, 96 S.W.3d at 469. The state must show by clear and convincing evidence that consent was freely given. *Reasor*, 12 S.W.3d at 817; *Carmouche v. State*, 10 S.W.3d at 331. It is not sufficient to show a mere acquiescence to a claim of lawful authority. *Id.*; *D.R.*, 96 S.W.3d at 469. The consent must be positive and unequivocal. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1993).

In determining whether consent was voluntary, courts must look to "the totality of all the surrounding circumstances–both the characteristics of the accused and the details of the interrogation." *Schneckloth*, 412 U.S. at 226. In making these determinations, courts consider factors such as the circumstances leading up to the search; the reaction of the accused to pressure; the youth, education, and intelligence of the accused; the length of the detention; the repetitiveness

5

of the questioning; and any use of physical punishment. *Id.*; *Reasor*, 12 S.W.3d at 818; *see also State v. $217,590.00 in United States Currency*, 18 S.W.3d 631, 634-35 (Tex. 2002) (voluntariness analysis in civil forfeiture proceedings).

We hold that, based on the totality of circumstances in this case, the State established by clear and convincing evidence that appellant's consent was voluntary. Viewed in the light most favorable to the court's judgment, the evidence shows that appellant freely agreed to submit to a search. When the officer persisted in obtaining a straight answer to his question, appellant's verbal and non-verbal responses indicated his voluntary agreement with the request for a search. He responded, "okay" or "all right" as he held out his arms to his sides to allow the officer to search him. His words and gestures were consistent with voluntary consent.

An earlier decision of this Court supports our conclusion. In *In re D.G.*, we upheld the trial court's denial of a juvenile defendant's motion to suppress on facts that are similar in important respects. 96 S.W.3d 465. There, a school district police officer was on duty at a high school. He received a tip from a school student that the defendant, a sixteen-year-old student at the school, was selling crack cocaine which he kept in the hood of his sweatshirt. The officer located the defendant after school at a gas station next to the school.

As he approached the defendant, the officer asked how he was doing, and the defendant responded "fine." The officer then asked, "You don't have anything on you that you're not supposed to, do you"? The defendant responded that he did not, and the officer asked if he could search the defendant. The defendant answered "go ahead," but complained that he was being hassled and denied having anything on him. The officer again asked to search, and the defendant said "'sure'

6

and responded to the request by placing his hands against a freestanding pay telephone and 'assuming the position' with his arms and legs spread apart to facilitate the search." *Id.* at 467. The pat-down search revealed crack cocaine in the hood of the defendant's sweatshirt. The trial court held that the consent to search was voluntary and this Court affirmed. *Id.* at 469.

That decision noted that although the officer was in uniform and armed, he never threatened or coerced the defendant and did not persist in questioning him. *Id.* at 468. This Court noted that "[n]othing the officer said or did would suggest to [the defendant] that he was required to consent." *Id.* We held that there was clear and convincing evidence that the consent to search was voluntary. *Id.* at 469. We noted that the consent to search was requested within seconds of the encounter, and the officer showed no force and did not "persist beyond an appropriate bound." *Id.* The defendant responded "both orally and physically, agreeing to the request." *Id.* Based on the totality of these circumstances, this Court concluded that the State met its burden of showing voluntary consent. *Id.*

Here also, the juvenile appellant was initially evasive about being searched, but then agreed when the officer would not be distracted. Officer Egal testified that he considered appellant's initial responses to be no answers at all, rather than negative ones. We do not believe the officer in this case persisted beyond the bounds that justify a finding of voluntariness. The detention was relatively brief, occurred in broad daylight, the boy obviously had more than a passing familiarity with pat-down searches, and he was not alone, but in the company of an adult. There was no use or threat of force. The officer was alone in detaining and searching two suspects.

7

We hold that the State met its burden of establishing by clear and convincing evidence that appellant voluntarily consented to the search. Appellant's sole issue on appeal is overruled.

## CONCLUSION

The judgment of the trial court is affirmed. *See* Tex. Fam. Code Ann. § 56.01(i) (West 2002).

_____

David Puryear, Justice

Before Justices Yeakel, Patterson and Puryear

Affirmed

Filed: May 30, 2003